# Galt *v.* Seaboard Construction Company, Appellant.

Argued November 9, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry Norman Ball*, with him *Morris L. Weisberg*, for appellant.

*Francis E. Marshall*, with him *Francis E. Shields, Joseph S. Conwell, Jr., W. Edward Greenwood* and *Pepper, Bodine, Stokes & Hamilton*, for appellees.

OPINION BY MR. JUSTICE JONES, January 4, 1954:

The defendant, Seaboard Construction Company, a corporation, having entered into a contract with At-

lantic City for the construction of a jetty, sought a supplier of the necessary stone by inviting bids from quarry operators. The plaintiff, John S. Galt, doing business under the fictitious name of Keystone Trappe Rock Company, was low bidder. After officers of Seaboard had satisfied themselves from a visit to Keystone's quarries and upon assurances from Galt that Keystone was capable of supplying Seaboard's requirements of stone for the work, the parties orally entered into an agreement which Seaboard confirmed in writing in the form of a letter addressed to Keystone which the latter expressly approved by signature.

The presently material parts of the agreement are as follows: "This will confirm your [Keystone's] agreement to supply to us [Seaboard] up to our requirements of jetty stone approximating 31,000 tons for our contract on the Atlantic City jetties, Project No. 206, at Atlantic City, New Jersey, with which you are familiar." The specified price for the stone was "$292½ per 2,000 lbs. f.o.b. cars . . . ." The agreement also contained the following,—"In order to fulfill our contract, beginning about November 1st we must be given the right, and you agree that we may require as much as 400 tons per day, and we cannot afford any delay in delivery, and if you do not meet our requirements, you will agree that we must reserve the right to procure stone elsewhere."

Seaboard was obligated by its contract with Atlantic City to complete the job in 140 calendar days. The contract with Atlantic City also provided for penalties on Seaboard if it failed to complete the job on time. Under normal conditions the work should have been completed about mid-March of 1946.

Keystone, for various assigned reasons, failed to fulfill Seaboard's requirements of stone for the job,

having delivered in all up to June 1946 only 9,249.60 tons; and, although Seaboard requested shipment of 400 tons of stone a day, Keystone never fully complied. In the end, Seaboard was compelled to buy some 18,000 tons of additional stone in the open market for the completion of the work. For such additional stone, Seaboard was required to pay 20½¢ per ton more than the price specified in its contract with Keystone.

The relative rights and liabilities of Keystone and Seaboard, after Keystone's failure to perform in full, not having been adjusted amicably, Keystone [1] sued Seaboard, claiming an unpaid balance due under the contract of $7,276.19 with interest from April 23, 1946. The defendant answered denying any liability whatsoever to the plaintiff and, on the contrary, averred that the plaintiff was indebted to the defendant in a total sum of $25,928.78 with interest from April 9, 1946, for which the defendant counterclaimed. The principal sum of the counterclaim was itemized as $3,-704.97, the excess price paid by the defendant over the contract price for the stone necessarily purchased in the open market, $25,000 for additional cost of idle equipment, labor, supplies and other direct expenses due to the plaintiff's delay in shipping and its ultimate failure to ship up to the amount of the defendant's requirements and $4,500 for additional general office overhead expenses for a total of $33,204.97 less the sum of $7,276.19 claimed by the plaintiff or a net of $25,928.78.

The trial judge submitted to the jury all of the issues thus raised. The jury contemporaneously returned two verdicts, one in favor of the plaintiff in

---

[1] John S. Galt, the proprietor of Keystone Trappe Rock Company, dying prior to trial, his death was suggested of record and his executors were substituted as plaintiffs.

the sum of $9,713.70, including interest, being the balance due for the stone actually shipped and delivered, and a verdict for the defendant on its counterclaim in the sum of $3,704.97,[2] plus interest, for the excess cost of the stone purchased in the open market. The plaintiff moved for judgment n.o.v. with respect to the verdict in favor of the defendant on its counterclaim while the defendant moved for judgment n.o.v. with respect to the verdict for the plaintiff and for a new trial. The court en banc granted the plaintiff's motion but refused the defendant's. Judgment was then entered in the apparently erroneous form as indicated in footnote 2, supra.

We think the learned court below was correct in denying both motions of the defendant. Its motion for judgment n.o.v. was based upon a contention that its contract with Keystone was entire and that since the plaintiff had not and could not aver complete performance, he could not recover on the contract, citing *Easton v. Jones,* 193 Pa. 147, 44 A. 264. In the *Easton* case, however, a definitely fixed amount of lumber was contracted for, while in the present instance the quantity was variable, viz., *"up to* [the defendant's] requirements *approximating* 31,000 tons . . ." which actually proved to be just slightly over 27,300 tons for the completed job (Emphasis supplied). Obviously, the contract was not for a definite quantity

---

[2] The jury's verdict as above stated is as announced by the foreman to the clerk in open court upon the taking of the verdict. However, for some reason not apparent, the certified copy of the docket entries on the appeal to this court shows "Verdict in favor of plaintiffs against Seaboard Construction Company, Counterclaimant, in the sum of $3704.97 against John Gillespie Galt and Howard Thomas Galt, Executors of Estate of John A. Galt, deceased." The verdict as thus recorded is patently in error. But, it is upon that verdict that the judgment from which this appeal was taken was entered below.

of material. Other matters in the contract, such as the buyer's specific reservation of the right to purchase stone elsewhere upon the seller's failure to deliver, indicate that the contract was to be considered divisible. Accordingly, the plaintiff was entitled to sue for the value of the stone delivered, the amount of which, as claimed by the plaintiff, is impliedly admitted by the defendant's counterclaim.

The defendant's motion for a new trial was based on the fact that the jury made no allowance for the special damages which the defendant pleaded for the additional expenses to which it was subjected by reason of the idle equipment and labor due to the plaintiff's failure to deliver the stone timely or in sufficient quantities. The jury was under no compulsion to accredit such items as having been persuasively proven. Nor did the defendant take any exception to the manner of the trial court's submission of those items to the jury. Moreover, the contract contained a provision, which the defendant had inserted, that ". . . if you [Keystone] do not meet our [Seaboard's] requirements, you will agree that we must reserve the right to procure stone elsewhere." That provision must be taken to have been included for the defendant's benefit in obviating any damage due to delay on the part of the plaintiff. In short, the defendant was to protect itself against delay by the plaintiff. Thus, the contract did not contemplate the possibility of special damages for which the plaintiff would be liable.

We do not agree, however, with the action of the court below in entering judgment n.o.v. for the plaintiff with respect to the verdict for the defendant for a portion of its counterclaim. The provision in the contract whereby Keystone agreed that Seaboard had reserved the right to procure stone elsewhere in case Keystone was unable to meet Seaboard's require-

ments was not intended to have any greater effect than what we have hereinabove attributed to it, namely, that Seaboard could promptly obviate any delay in Keystone's performance with assurance in advance of no objection or insistence otherwise from Keystone. The provision was not sufficient, however, and could not therefor have been intended, to extinguish the buyer's right to charge the seller for the increase in the price paid for the material purchased in the open market upon the seller's failure to deliver timely. Nothing less than a clearly expressed intent would suffice to take away the buyer's cognate legal right.

Against the verdict for the plaintiff in the sum of $9,713.70, which included interest to the date of verdict, the defendant is entitled to a credit for the amount of the verdict in its favor in the sum of $3,-704.97 with interest (which the jury awarded but did not compute) from April 23, 1946,[3] to February 7, 1952, the date of the verdict, for a total of $4,991.71. Subtracting that amount from the verdict of $9,713.70 in favor of the plaintiff leaves a balance due the plaintiff as of the date of the verdict (February 7, 1952) of $4,721.99.

The judgment appealed from is reversed and the record remanded with direction to the court below to enter judgment for the substituted plaintiffs in the sum of $4,721.99 with interest from February 7, 1952.

---

[3] The defendant claimed interest from April 9, 1946, but as interest on the plaintiff's claim, as included in the jury's verdict, was calculated from April 23, 1946, that date is also selected for the running of interest on the defendant's allowable counterclaim.